[Cite as *In re Kohler*, 2011-Ohio-4156.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: WILLIAM T. KOHLER


WILLIAM T. KOHLER

     Applicant


 Case No. V2010-50078

Commissioners:
Susan G. Sheridan, Presiding
William L. Byers IV
E. Joel Wesp

ORDER OF A THREE-
COMMISSIONER PANEL

---

{¶1}On May 4, 2009, the applicant, William Kohler, filed a compensation application as the result of a robbery which occurred on March 22, 2009. On June 18, 2009, the Attorney General issued a finding of fact and decision denying the applicant's claim since he tested positive for cocaine at the time he was treated for his injuries at the University of Cincinnati Hospital on the day of the incident. The Attorney General denied the applicant's claim pursuant to R.C. 2743.60(E)(1)(e). On September 10, 2009, the applicant submitted a request for reconsideration. On January 8, 2010, the Attorney General rendered a Final Decision finding no reason to modify the initial decision. On February 2, 2010, the applicant filed a notice of appeal from the January 8, 2010 Final Decision of the Attorney General.

{¶2}After granting three motions for extensions of time filed by the parties, a hearing was held before this panel of commissioners on April 20, 2011 at 10:45 A.M.

{¶3}The applicant, William Kohler, appeared with his attorney Michael McIntosh while Assistant Attorney General Melissa Montgomery represented the state of Ohio.

{¶4}The applicant's counsel commenced the hearing by making a brief opening statement.  Counsel related that the applicant was the victim of a breaking and entering and a shooting on the night of March 22, 2009.  While Mr. Kohler was in a state of semi

consciousness, his friend and roommate Eddie Lavatori surreptitiously administered cocaine to Mr. Kohler with the belief that it would assist Mr. Kohler in his medical recovery.   Only recently did the applicant learn about his friend's actions and consequently this explains how Mr. Kohler tested positive for cocaine.

{¶5}The Attorney General asserted that the positive toxicology report supplied by the University of Cincinnati Hospital which shows that cocaine was in the applicant's body on the night of the incident was sufficient to shift the burden to the applicant. The applicant would have to establish that either the testing procedure was faulty or the applicant unknowingly ingested the cocaine.   The Attorney General contends the applicant will be unable to meet his burden in this regard.

{¶6}Mr. Kohler testified that at the time of the incident he was in charge of a company called Elite Motor Cars of Cincinnati.  This company engaged in the leasing of high-end motor vehicles on a daily, weekly, or monthly basis.  The applicant introduced a DVD produced from a video surveillance camera showing the area surrounding the front door to the applicant's residence.  The Attorney General expressed no objection to the introduction of the DVD into evidence.  The applicant narrated the events appearing on the video screen as the DVD was played.  The DVD depicted two masked individuals invading the applicant's home, the applicant attempting to subdue one of the attackers, and subsequently being shot in the leg by the other assailant.  The applicant related the bullet struck his femoral artery and he lost a massive amount of blood.  At this time, he called for assistance from his friend Eddie Lavatori.  Mr. Lavatori called 911 and offered the applicant medical assistance until the emergency squad arrived at the scene.  The applicant asserted he "blacked out" prior to the arrival of the police.

{¶7}The applicant stated he had no prior felony criminal record.  He also stated he could not understand how he tested positive for cocaine.   The applicant then described Mr. Lavatori's history after Lavatori stopped residing with the applicant.  He detailed Lavatori's subsequent arrest for cocaine possession, incarceration, and transfer to a rehabilitation center.  While at the rehabilitation center Mr. Lavatori informed the

applicant that unbeknownst to the applicant he administered cocaine to him in an attempt to keep him conscious until medical assistance arrived.

{¶8}Finally, the applicant stated that he incurred medical expenses in excess of $225,000.00 and continues to experience pain. He stated, "I don't take pain killers for it because I don't do drugs."

{¶9}Upon cross-examination, the applicant disclosed that the DVD was produced by a security camera located inside of his residence. Upon the Attorney General's request the DVD was shown again. The Attorney General asked a series of questions concerning the duration of the recorded images. Based on the time stamps appearing on the DVD, the applicant stated it appeared the police arrived on the scene approximately one minute after the occurrence of the shooting.

{¶10}Upon redirect examination the applicant clarified, after re-examining the time stamps that the police arrived within eight minutes after the occurrence of the events surrounding the shooting. Whereupon, the testimony of Mr. Kohler was concluded.

{¶11}The applicant called Mr. Lavatori to testify. Mr. Lavatori related on March 22, 2009, he was residing in the home of Mr. Kohler. On the day of the incident, Mr. Lavatori stated he was on the second floor of the Kohler residence playing video poker when he heard a commotion culminating in a gunshot and a shout from Mr. Kohler demanding he call 911. He placed the call and attempted to administer first aid by pressing down on the wound with a clean white towel. He stated that Mr. Kohler was barely conscious at this time and he believed it was in Mr. Kohler's best medical interest to stay awake. At that time he possessed a squirt bottle containing cocaine and squirted it up Mr. Kohler's nose.

{¶12}Mr. Lavatori recounted he did not inform anyone, the applicant, the police, or the emergency squad personnel that he was in possession of cocaine, since such possession is illegal. He related, it was years later when at a rehabilitation center that he finally admitted to Mr. Kohler that he had administered cocaine to him on the night of

the incident. Mr. Lavatori explained the process of converting powdered cocaine into a liquid form and dispensing it with the use of a Afrin bottle.

{¶13}Upon cross-examination Mr. Lavatori revealed he had been evicted from his apartment, was jobless, gambling, and using cocaine when he moved in with Mr. Kohler. Mr. Lavatori admitted he told no one, including Mr. Kohler, about giving him cocaine.

{¶14}After Mr. Kohler's release from the hospital, Mr. Lavatori conceded he stayed with Mr. Kohler and cared for him during his recovery period. The Attorney General stated that a claim was submitted seeking to reimburse Mr. Lavatori for $30.00 per day for a grand total of $2,400.00 for services he provided to Mr. Kohler. He stated he is no longer seeking money from the Victims of Crime Compensation Program and he believes any money he earned for caring for Mr. Kohler was offset by the free rent he received.

{¶15}Upon questioning by the panel of commissioners Mr. Lavatori stated that Mr. Kohler was unaware he was using cocaine or had a drug problem. Whereupon, Mr. Lavatori's testimony was concluded.

{¶16}In closing, the applicant stated that Mr. Kohler did not knowingly use or possess cocaine. The cocaine was administered surreptitiously by the misguided actions of his friend. Accordingly, there is no evidence to the contrary that Mr. Kohler knowingly possessed cocaine. Furthermore, applicant contends this panel should rely on the holding in *State v. Wolfson* 2004-Ohio-2750, which states at ¶14 that "[w]hen the State relies upon a positive urinalysis to prove a defendant used drugs, the State should produce a witness who can testify about the reliability of the test results." Accordingly, it is the state's burden to prove that the testing procedures were conducted in a reliable fashion. In the case at bar, the Attorney General has failed to meet this burden. Therefore, the applicant objected to the admission of the test results.

{¶17}The Attorney General asserts this panel should rely on the holdings in *In re Grow* (1983), 7 Ohio Misc. 2d 26, and *In re Martin*, V80-37283jud (12-30-81), in that

this proceeding is a special statutory proceeding and the rules of evidence do not apply. The record of this case is all the information collected by the Attorney General's Office in rendering its initial and final decision. This record was provided to the panel of commissioners pursuant to R.C. 2743.61. Accordingly, the panel has the authority and ability to weigh any information obtained in this manner.

{¶18}The Attorney General asserted that once the applicant tested positive for a felony drug then the burden of proof shifts to the applicant to show that either the test was unreliable or erroneously performed or the applicant did not knowingly ingest the felony drug.

{¶19}Furthermore, the Attorney General asserts the applicant engaged in a dangerous occupation, leasing expensive high-end vehicles from his residence. The applicant testified that transactions were facilitated with cash, presenting a risk of criminal activity. This risky lifestyle was evidenced by the applicant having a security camera installed at his front door. Also, evidence indicates that the applicant has used drugs. Page one of the University Hospital, Stat Discharge Summary, dictated by Sara Chung M.D. states in pertinent part: "Since the patient had a vascular graft in place, endocarditis was a concern as the patient has a substance abuse history, although he denied IV drug abuse. . ."

{¶20}The Attorney General also contends that the witness, Mr. Lavatori, has a personal and financial interest in the case, since he filed a claim for $2,400.00 for replacement services loss provided to the applicant during his disability period. Finally, the accuracy of the witness' story is questionable since he contends he was "out of it" because of his excessive use of cocaine before the occurrence of the incident, yet at

other times provides detailed knowledge of the contents of the 911 call and his response after the shooting. In conclusion, the Attorney General asserts the Final Decision should be affirmed.

{¶21}Finally, the applicant states that Mr. Kohler's affidavit questions the validity of the test, since Mr. Kohler believes the test results are wrong. Accordingly, the applicant contends an expert witness must be provided by the state to prove the validity of the test. *In re Ferry*, V2007-90188tc (8-3-07), 2007-Ohio-4704. Furthermore, there is no question that a positive test result would be consistent with Mr. Lavatori's testimony but the Attorney General has offered no testimony to contradict Mr. Kohler's testimony that he did not voluntarily ingest cocaine. Based upon Mr. Lavatori's testimony, he withdrew any claim to be reimbursed through the applicant's claim for services he provided to Mr. Kohler.

{¶22}The Attorney General stated that the file contained an affidavit from the person who conducted the hospital test which describes the procedures that were used. A review of the case file revealed a letter dated January 4, 2010 from Wanda Broerman, Assistant Director, Laboratory Services, The University Hospital. The letter outlines the test used, a Triage drug of Abuse panel plus PPX which detects cocaine at levels at or above 300 mg/ml. Prior proficiency testing performed by the College of American Pathologists revealed, based on three samples twice a year, that the hospital testing proved 100% accurate. However, no confirmation testing is performed and the results are used by the physicians for clinical treatment. The Attorney General asserts in order to rebut the test results that applicant would have had to introduce contra expert testimony which he failed to do. Whereupon, the hearing was concluded.

{¶23}R.C. 2743.60(E)(1)(e) states:

"(E) (1) Except as otherwise provided in division (E)(2) of this section, the attorney general, a panel of commissioners, or a judge of the court of claims shall not make an award to a claimant if any of the following applies:

(e) It is proved by a preponderance of the evidence that the victim at the time of the criminally injurious conduct that gave rise to the claim engaged in conduct that was a felony violation of section 2925.11 of the Revised Code or engaged in any substantially similar conduct that would constitute a felony under the laws of this state, another state, or the United States."

{¶24}Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

{¶25}Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a cause. The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."

{¶26}The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. *State v. DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus. The court is free to believe or disbelieve, all or any part of each witness's testimony. *State v. Antill* (1964), 176 Ohio St. 61, 26 O.O. 2d 366, 197 N.E. 2d 548.

{¶27}When the Attorney General presents a positive toxicology report for cocaine the applicant must present sufficient evidence that: 1) he did not knowingly and voluntarily ingest cocaine; 2) the toxicology results were faulty due to unprofessional or improper sample collection procedure; or 3) he did not engage in felonious drug use at the time of the criminally injurious conduct. *In re Ferry*, V2007-90188tc (8-3-07), 2007-

Ohio-4704. The applicant's admission of drug use can be considered in rendering a decision. *In re Paige* (1994), 66 Ohio Mis. 2d 156.

{¶28}From review of the case file and with full and careful consideration given to the testimony of the applicant and his witness and the arguments of the parties, we find the applicant's claim was properly denied pursuant to R.C. 2743.60(E)(1)(e). In *In re Ferry* a panel of commissioners held a positive toxicology report created a rebuttable presumption of felonious conduct. However, the applicant has the burden to present evidence which questions the validity or reliability of the underlying test. In the case at bar, the Attorney General has presented an affidavit from The University Hospital concerning the type of test given to the applicant and its reliability. The applicant has not presented expert testimony which questions either the credibility or procedures used to conduct the test. Accordingly, the applicant has failed to rebut the validity of the test.

{¶29}*Ferry* also requires that the applicant establish he did not knowingly and voluntarily ingest cocaine and he did not actually engage in felonious drug use at the time of the criminally injurious conduct. To determine whether the applicant has satisfied his burden of proof we must critically evaluate the testimony of the applicant. On the witness stand the applicant stated: "I don't take pain killers for it (meaning the pain caused by the shooting) because I don't do drugs." However, a review of the medical records from The University Hospital revealed the applicant self reported that he was an occasional drug user and Sara Chung M.D. noted that the applicant had a "substance abuse history." The holding in *In re Paige* allows this panel to consider admissions of illegal drug use made to medical personnel. Accordingly, we find the statements the applicant related on the witness stand to lack credibility. Therefore, we find the applicant has failed to meet his burden of proof to establish by a preponderance

of the evidence that he unknowingly ingested cocaine or that he did not actually engage in felonious drug use at the time of the criminally injurious conduct.  Hence, the Attorney General's decision of January 8, 2010 is affirmed.

IT IS THEREFORE ORDERED THAT

{¶30}1)  Applicant's Exhibit 1, a DVD taken at the time of the criminal incident, is admitted into evidence;

{¶31}2)  The January 8, 2010 decision of the Attorney General is AFFIRMED;

{¶32}3)  Costs are assumed by the court of claims victims of crime fund.


_____
SUSAN G. SHERIDAN
Presiding Commissioner


_____
WILLIAM L. BYERS IV
Commissioner


_____
E. JOEL WESP
Commissioner

ID #I:\VICTIMS\2010\50078\6-23-11 panel decision.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Hamilton County Prosecuting Attorney and to:


Filed 7-22-11
Jr. Vol. 2279, Pgs. 109-117
Sent to S.C. Reporter 8-19-11